IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**MARIE WILLIAMS SMITH**                                                                     **PLAINTIFF**

**V.**                                               **CIVIL ACTION NO. 3:14CV559 HTW-LRA**

**CAROLYN W. COLVIN,**
**ACTING COMMISSIONER OF SOCIAL SECURITY**            **DEFENDANT**

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Marie Smith appeals the final decision denying her applications for a period of disability insurance benefits ("DIB") and supplemental security income ("SSI"). The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge. Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that the decision be affirmed.

**Factual and Procedural Background**

In May 2011, Plaintiff filed applications for SSI and DIB alleging a disability onset date of February 3, 2011, due to sleep apnea and disc problems in her back. At the administrative hearing, she also complained of diabetes, hypertension, anxiety, and pain in her dominant right upper extremity. She was 40 years old on her alleged onset date, and has an eleventh grade education, with past relevant work experience as a housekeeper, sitter, school cook, and daycare worker. Following agency denials of her application, an Administrative Law Judge ("ALJ") rendered an unfavorable decision

finding that she had not established a disability within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review. She now appeals that decision.

Upon reviewing the evidence, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. At step one of the five-step sequential evaluation,[1] the ALJ found that she had not engaged in substantial gainful activity since her alleged onset date. At steps two and three, the ALJ found that although Plaintiff's history of hypertension, degenerative disc disease, and osteoarthritis of the cervical and lumbar spines were severe, they did not meet or medically equal any listing. At step four, the ALJ found that Plaintiff had the residual functional capacity to:

> perform less than a full range of light work as defined in 20 CFR 404.1567(a) and 416.967(a). The claimant can lift and carry only ten pounds occasionally and up to five pounds frequently with the right upper extremity. She should avoid concentrated exposure to extreme temperatures. The claimant cannot work with hazardous machinery or from unprotected heights. She can occasionally balance, stoop, kneel, crouch, crawl, and climb stairs and ramps; she cannot climb ladders, ropes, or scaffolds. She is limited to occasional bilateral upper extremity overhead reaching and occasional bilateral lower extremity pushing, pulling, and pedal operation.[2]

Based on vocational expert testimony, the ALJ concluded at step five, that given

---

[1] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

[2] ECF No. 11, pp. 48-49.

Plaintiff's age, education, work experience, and residual functional capacity, she could perform light, unskilled work as a ticket seller, cashier/self-service, and parking lot cashier.

## Standard of Review

Judicial review in social security appeals is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d at 295 (5th Cir. 1992)). This Court may not re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

## Discussion

Plaintiff argues that the Commissioner's decision should be remanded because: (1) the ALJ's residual functional capacity determination is "vague and unexplained;" (2) the ALJ's adverse credibility determination is not supported by substantial evidence; and, (3) the ALJ failed to account for her exertional and manipulative limitations.

### 1. The ALJ's decision is not vague and unexplained.

Plaintiff argues that the ALJ's decision is "vague and unexplained," because although his residual functional capacity assessment restricts her to a limited range of light work, the ALJ cites the regulation for sedentary work; uses the terms "sedentary" and "light" interchangeably; and, assigns exertional limitations that are inconsistent with the regulatory definition of light work. However, a neutral reading of the ALJ's decision reflects that he intended to find that Plaintiff was limited to a restricted range of light work. Although the ALJ cited the regulation for sedentary work and used the term "sedentary" instead of "light" at step five, these are the only two instances identified by Plaintiff, and they are clearly typographical errors. In all other instances, the ALJ consistently indicates that Plaintiff has the residual functional capacity to perform a limited range of light work.

Plaintiff also charges that the ALJ's analysis is incomplete because he failed to properly evaluate her residual functional capacity by performing a function-by-function assessment of her work ability in compliance with SSR 96-8p; specifically, the ALJ failed to specify her ability to sit, stand, walk, or lift and carry with her left upper extremity.[3]

---

[3] Light work is defined in 20 C.F.R. 404.1567(b) and 416.967(b):

(b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine

SSR 96-8p provides that residual functional capacity is a function-by-function assessment of an individual's ability to perform physical functions, including sitting, standing, walking, lifting, carrying, pushing, and pulling. *Id. See also* 20 C.F.R. § 416.945(b) (2005). The ALJ's residual functional capacity assessment reflects a narrative discussion of Plaintiff's ability to do sustained work-related activities in an ordinary work setting on a regular continuing basis in compliance with Social Security Ruling 96-8p, 1996 WL 374184; 20 C.F.R. § 404.1546(c) (2009).

The ALJ found that Plaintiff has the residual functional capacity to perform light work except she should lift and carry 10 pounds occasionally and up to 5 pounds frequently with her right upper extremity; and, occasionally perform postural functions but never climb ladders, ropes, or scaffolds. She is also limited to "occasional bilateral upper extremity overhead reaching and occasional bilateral lower extremity pushing, pulling, and pedal operation." In making these determinations, the ALJ's decision reflects a clear and well-reasoned analysis of Plaintiff's symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence. *See Porter v. Barnhart*, 200 Fed. Appx. 317 (5th Cir. 2006) (unpubl) (finding compliance with SSR 96-8p when the ALJ considers the record as a whole). Substantial evidence as set forth below supports his conclusion that Plaintiff's

---

that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

impairments limited her to a restricted range of light work.[4]

### 2. Substantial evidence supports the ALJ's credibility determination.

Next, Plaintiff argues that the ALJ erred in assessing her credibility. Plaintiff testified that lower back pain radiating into her hips and legs prevents her from bending at the waist, stooping, and squatting. She frequently falls as a result and has to use a cane. She also claimed that she cannot stand for longer than four minutes or sit for longer than thirty minutes at a time, and can only walk a half block. She also experiences neck pain that radiates into her upper extremities causing numbness, weakness, and reduced strength in her right hand. The resulting pain and limitations are so severe that Plaintiff states she wears a brace on her right hand, and cannot cook, wash clothes or dishes, sweep, or shop for groceries; she also cannot drive a car, type, grip, button, reach, or climb a flight of stairs.[5] In evaluating Plaintiff's credibility, the ALJ stated the following:

> The undersigned finds the claimant's subjective complaints and hearing testimony to be greatly lacking in credibility. The claimant's testimony of reduced ability to perform postural activities and activities of daily living is unsupported by the medical evidence of record. Her allegations of stringent functional limitations wherein she is unable to walk, stand, or sit for prolonged periods is likewise unsupported by the medical evidence of record. Her allegations of stringent restriction in the activities of daily living wherein she can allegedly perform none of the customary household chores likewise appears greatly disproportionate to the limited findings in the clinical and objective medical evidence.[6]

---

[4]ECF No. 11, pp. 48-49.

[5]*Id*. at 58-112.

[6]ECF No. 11, pp. 50-51.

The ALJ has the responsibility to evaluate the credibility of witnesses, and his determination that the clinical and objective evidence did not support the degree of limitation alleged is entitled to considerable deference. *McKnight v. Astrue*, 340 F. App'x 176, 181 (5th Cir. 2009).

With respect to Plaintiff's upper extremities, EMG and nerve conduction studies were "entirely normal bilaterally" with no evidence of radiculopathy. Clinical examinations showed diminished sensation and "slight wasting" in her right arm muscles, but there was no evidence that Plaintiff had been instructed to wear a brace on her right hand. Notwithstanding, the ALJ limited Plaintiff to a restricted range of light work with reduced lifting and carrying to account for her complaints regarding her right upper extremity numbness. And, although the evidence failed to establish limitations with her left upper extremity, the ALJ's residual functional capacity determination limits Plaintiff to occasional bilateral overhead reaching.[7]

Relative to Plaintiff's back and lower extremity pain, medical records confirm that she presented with complaints of bilateral low back pain with occasional radiation into the right thigh and knee in May 2011. The pain was reportedly exacerbated with lifting, standing, and walking, and had been present for two years. Plaintiff was diagnosed with lumbar radiculopathy and received steroid injections, which provided pain relief. She also reported some relief with prescription medication but stopped taking it because it

---

[7]ECF No. 11, p. 483.

was too expensive in November 2011; she also discontinued physical therapy because she reported it increased her pain.  Plaintiff did not resume treatment until June 2012.  At that time, she reported that her symptoms were getting progressively worse, but acknowledged that a TENS unit provided "some relief."  MRI results revealed mild spondylosis in the cervical and lumbar spines, and mild degenerative and facet arthritis of the cervical and lumbar spines without acute abnormalities or severe stenosis, or significant disc herniation.  Plaintiff also showed no evidence of acute pathology, and had a normal EMG and a negative nerve conduction study of her lower extremities.[8]

Given the diagnoses and objective evidence, the ALJ reasonably concluded that Plaintiff's pain allegations and subjective complaints were not entirely credible.  As the ALJ observed, Plaintiff typically presented "with spinal tenderness on palpation (primarily in the lumbar area), some positive straight leg raising, and diminished range of motion in the lumbar spine; however, examinations routinely show where her motor strength is full, sensory and neurological functioning is intact, and DTR's are equal."  Medical records also confirm that her treatment was conservative in nature, though contrary to the ALJ's assertion, Plaintiff reported no "durable relief" to her treating physicians.  However, her physicians found "no real clear diagnosis for her bilateral lower extremity pain," and advised Plaintiff to follow up as needed in November 2012.  The record reveals that she failed to do so, undermining her allegations of constant and

---

[8]ECF No. 11, pp.  278-295, 298-308, 383-401.

unremitting pain. *McGuire v. Commissioner of Social Security*, 178 F.3d 1295, *7 (6th Cir.1999) (gaps in treatment may reasonably be viewed as inconsistent with a claim of debilitating symptoms).[9]

Despite the lack of medical evidence, the ALJ considered Plaintiff's complaints of pain in determining her residual functional capacity. Although he found her impairments caused no more than mild to moderate pain, the ALJ concluded that a limitation to a restricted range of light work would significantly "reduce her daily pain levels, as she would not be required to lift or carry much weight while also allowing for significant environmental and postural restrictions." A limitation to a restricted range of light work would also account for her mild cervical and lumbar degenerative disc disease and hypertension. The ALJ's credibility determination comports with relevant legal standards and is substantially supported by the evidence.[10]

### 3. Substantial evidence supports the ALJ's assessment of Plaintiff's exertional and manipulative limitations.

In addition to the foregoing, the ALJ based his residual functional capacity determination, in part, on the functional analysis of the state agency consultant, who opined that Plaintiff could perform light exertional work with unlimited exertional and manipulative limitations, and occasional postural functioning. When an ALJ's residual functional capacity assessment is based, in part, on the function-by-function analysis of

---

[9]ECF No. 11, pp. 278-295, 298-308, 383-401.

[10]*Id*. at 51.

9

the claimant's limitations contained in a state agency medical consultant's medical report, the Fifth Circuit has held that SSR 96–8p is satisfied. *Onishea v. Barnhart*, 116 F.App'x 1 (5th Cir. 2004); *Myers v. Apfel*, 238 F.3d 617 (5th Cir. 2001); *Coots v. Commissioner of Social Security*, No. 12-2786, 2014 WL 458466 (W.D. LA., Feb. 4, 2014). Here, the ALJ declined to adopt the state agency consultant's finding that Plaintiff could perform the full range of light exertional work with only occasional postural functioning. Instead, the ALJ implicitly found that while Plaintiff does not have any standing and walking limitations, she is limited to: lifting and carrying only 10 pounds occasionally and 5 pounds frequently; occasional bilateral overhead reaching, pushing, pulling, and pedal operation; and, never climbing ladders, ropes, or scaffolds.

Notwithstanding, Plaintiff argues that the ALJ's failure to assign standing and walking limitations in his residual functional capacity assessment was reversible error. Nothing of record supports her testimony that she can only stand for four minutes or sit for thirty minutes at a time. Nor does the evidence establish that she frequently falls and needs to walk with a cane. Also, no examining or treating physician has ever assigned standing or walking limitations.

Contrary to Plaintiff's argument on appeal, the inability to perform the full range of light work does not mean that she was disabled or only capable of performing sedentary work. *Conaway v. Astrue*, No. 3:07CV906 - BD, 2008 WL 4865549, at *4 (N.D. Tex. Nov. 10, 2008). Social Security rulings provide that where a Plaintiff's residual functional capacity does not precisely coincide with the exertional criteria of

sedentary or light work, the ALJ should consult a vocational expert. That is what the ALJ did in this case. SSR 83-12, 1983 WL 31253, at *2. The ALJ posed several hypotheticals to the vocational expert, including one that inquired whether jobs existed in significant numbers that Plaintiff could perform given only the limitations of her residual functional capacity. The vocational expert testified that she could perform work as a ticket seller, cashier/self-service, and parking lot cashier. Unlike the D.O.T., which gives only general descriptions of job duties, a "vocational expert is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion [as to] whether the claimant can perform the specific job." *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986). It is notable that the vocational expert was not cross-examined regarding standing and walking limitations.

With respect to her manipulative limitations, Plaintiff asserts that she is entitled to remand because the jobs identified by the vocational expert require frequent hand use. She argues that substantial evidence establishes that a ganglion cyst in her right wrist was a severe impairment causing manipulative limitations, but the vocational expert was not so informed because the ALJ failed to consider her cyst-related pain and reduced hand strength. Plaintiff's argument is not persuasive.

The record reveals that following the administrative hearing, Plaintiff was diagnosed with a ganglion cyst in her right wrist on January 29, 2013. That same day, counsel submitted a letter for the ALJ's consideration advising of the diagnosis, along with a copy of the surgery order from Dr. Aubrey Lucas indicating that the cyst was to be

excised on February 20, 2013.  At some point thereafter, Plaintiff submitted additional diagnostic and treatment records from Dr. Lucas for the ALJ's consideration.  Those records indicate that the cyst is "very small, but it is exactly where she hurts clinically."  Dr. Lucas also indicated that there was no guarantee that the pain was attributable to the cyst or would go away if excised; he also advised of a risk of recurrence.  The cyst was successfully removed in February 2013.[11]

The ALJ's decision discusses the nerve conduction findings relative to Plaintiff's right upper extremity, but does not acknowledge the ganglion cyst diagnosis at any step of the sequential evaluation.  Instead, the ALJ focuses on the fact that there was no neurological explanation for Plaintiff's hand pain, and no evidence that a brace had been prescribed.  Procedural perfection is not required, however.  Errors are prejudicial only when they "cast doubt onto the existence of substantial evidence" supporting the ALJ's decision.  *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).  No such doubt has been cast here.[12]

After the ALJ issued his written decision, Plaintiff submitted more treatment records from Dr. Lucas as new and material evidence for the Appeals Council's consideration.  Those records reflect that the cyst reoccurred and was removed again on May 8, 2013.  No additional treatment is indicated after that date.

---

[11] ECF No. 11, pp.  473-474, 479.

[12] *Id.* at  469-484.

In its order denying relief, the Appeals Council advises that it considered the additional evidence from Dr. Lucas but found it did not provide a basis for changing the ALJ's decision. When additional evidence is considered by the Appeals Council, the evidence becomes part of the administrative record and a reviewing court must determine whether the denial of benefits remains supported by substantial evidence. *Jones v. Astrue*, 228 F. App'x. 403 (5th Cir. 2007); *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005). There must be a reasonable possibility that the evidence would have changed the outcome of the Commissioner's determination. *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

In the present case, Plaintiff fails to show that her diagnosis and treatment for a ganglion cyst following the administrative hearing would have changed the outcome of the ALJ's decision. It is well settled that a "medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987). While the evidence supports Plaintiff's contention that her hand pain was attributable to her ganglion cyst, nothing in the medical records indicates that she experiences hand pain or manipulative limitations when the cyst was removed. There is no evidence that Plaintiff continued having difficulty with hand pain, weakness, or grasping and holding objects after the cyst was excised. Nor does the record establish that Plaintiff experiences manipulative limitations beyond those assigned by the ALJ. The denial of benefits remains substantially supported for these reasons.

For these reasons, it is the recommendation of the undersigned United States Magistrate Judge that Defendant's Motion to Affirm the Commissioner's Decision be granted; that Plaintiff's appeal be dismissed with prejudice; and, that Final Judgment in favor of the Commissioner be entered.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636.

This the 29th day of January 2016.

/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE